1  RACHEL C. HERNANDEZ
   Acting United States Attorney
2  District of Arizona
   MONICA E. RYAN
3  STEFANI K. HEPFORD
   Assistant U.S. Attorneys
4  405 W. Congress, Suite 4800
   Tucson, Arizona 85701-5040
5  Telephone: (520) 620-7300
   Email: Monica.Ryan@usdoj.gov
6         Stefani.Hepford@usdoj.gov
   Attorneys for Plaintiff
7

☐ FILED    ☒ LODGED

**Feb 25 2025**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

☒ FILED    ☐ LODGED

**May 06 2025**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

8              IN THE UNITED STATES DISTRICT COURT

9                  FOR THE DISTRICT OF ARIZONA

10  United States of America,                   24-CR-797-PHX-GPC

11                 Plaintiff,                    **PLEA AGREEMENT**

12       vs.

13
    Casey James Purington,
14
                   Defendant.
15

16       Plaintiff, United States of America, and the defendant, Casey James Purington,

17  hereby agree to resolve this matter on the following terms and conditions:

18  1.   **PLEA**

19       The defendant will plead guilty to Count Three of the Indictment charging the

20  defendant with a violation of 18 U.S.C. § 2261A(2) and 2261(b), Cyberstalking, a Class D

21  felony offense.

22  2.   **MAXIMUM PENALTIES**

23       a.    A violation of 18 U.S.C. § 2261A(2) is punishable by a maximum fine of

24  $250,000, a maximum term of imprisonment of 5 years, or both, and a term of supervised

25  release of up to three years.  A maximum term of probation is five years (including a

26  minimum term of one year if probation is imposed).

27       b.    According to the Sentencing Guidelines issued pursuant to the Sentencing

28  Reform Act of 1984, the Court shall order the defendant to:

(1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.    <u>AGREEMENTS REGARDING SENTENCING</u>**

a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate that defendant's sentence shall be **<u>time served</u>**, followed by a three (3) year term of supervised release.  This stipulated sentence will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence to reach the stipulated sentence.

b.    Assets and Financial Responsibility.  The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest.  The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures).  The defendant also expressly authorizes the United States Attorney's

Office to immediately obtain a credit report as to the defendant to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

c.     Acceptance of Responsibility.  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: Counts 1 and 2.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States

1    shall be free to prosecute the defendant for all crimes of which it then has knowledge and

2    any charges that have been dismissed because of this plea agreement shall automatically

3    be reinstated.  In such event, the defendant waives any and all objections, motions, and

4    defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional

5    restrictions in bringing later charges or proceedings.  The defendant understands that any

6    statements made at the time of the defendant's change of plea or sentencing may be used

7    against the defendant in any subsequent hearing, trial, or proceeding subject to the

8    limitations of Fed. R. Evid. 410.

9    **6.**    **WAIVER OF DEFENSES AND APPEAL RIGHTS**

10          The defendant waives (1) any and all motions, defenses, probable cause

11   determinations, and objections that the defendant could assert to the indictment or

12   information; and (2) any right to file an appeal, any collateral attack, and any other writ or

13   motion that challenges the conviction, an order of restitution or forfeiture, the entry of

14   judgment against the defendant, or any aspect of the defendant's sentence, including the

15   manner in which the sentence is determined, including but not limited to any appeals under

16   18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

17   (habeas petitions), and any right to file a motion for modification of sentence, including

18   under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under

19   18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion).  This waiver shall

20   result in the dismissal of any appeal, collateral attack, or other motion the defendant might

21   file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

22   This waiver shall not be construed to bar an otherwise-preserved claim of ineffective

23   assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section

24   II.B of Ariz. Ethics Op. 15-01 (2015)).

25   **7.**    **DISCLOSURE OF INFORMATION**

26          a.    The United States retains the unrestricted right to provide information and

27   make any and all statements it deems appropriate to the U.S. Probation Office and to the

28   Court in connection with the case.

- 4 -

b.     Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.     The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)     criminal convictions, history of drug abuse, and mental illness; and

(2)     financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8.     FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.     Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.  Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule).  If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9.     ELEMENTS**

**Cyberstalking**

From on or about February 7, 2024, to on or about March 15, 2024, in the District of Arizona:

1.     The defendant intended to harass or intimidate Person A, a federal judge;

2.     The defendant used the mail, any interactive computer service, electronic communication service, electronic system of interstate commerce, or any facility of interstate or foreign commerce;

3.     The defendant engaged in a course of conduct, consisting of two or more acts, evidencing a continuity of purpose;

4.     The defendant's course of conduct caused or would be reasonably expected to cause substantial emotional distress to Person A.

**10.     <u>FACTUAL BASIS</u>**

a.     The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Defendant was a plaintiff in a civil suit. In December 2020, the assigned United States District Judge (Person A) granted the civil defendant's motion for summary judgment, effectively ending the case. In August 2021, Person A ordered Defendant to pay the civil defendant's attorneys' fees and costs associated with the case, totaling more than $28,000. In the months following that order, Defendant called and emailed the chambers of Person A repeatedly, expressing his disagreement with Person A's rulings, demanding that Person A return his calls to discuss her decision about his case, and accusing Person A of judicial misconduct. Defendant told chambers staff that he holds Person A responsible for the loss of his case and for his partner leaving him, stating that "she ruined my life." In April 2022, Deputy U.S. Marshals talked to Defendant about his calls to Person A's chambers, and he subsequently ceased contacting Person A for almost two years.

In February and March 2024, Defendant repeatedly emailed and called Person A's chambers and the chambers of other United States District Judges in the same courthouse. In total, Defendant made approximately 300 phone calls to the U.S. Courthouse in Phoenix, Arizona, and sent approximately 89 emails to Person A. Emails and voicemails sent by the defendant included:
       (1)     February 7, 2024: Defendant emailed Person A's chambers regarding the civil case, referred to Person A as a traitor, referenced how much he hates Person A, and told her to "get ready."
       (2)     February 10, 2024: Defendant sent an email to Person

A's chambers, referring to her using expletives, referencing the journey he's about to take her on, stating "now that I've lost everything, I can watch you lose everything."

        (3)     February 20, 2024: Defendant left a voicemail at Person A's chambers, stating, "I'm going to torment you like you've tormented me for the past several years."

b.     The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement, and I agree to be bound according to its provisions.

1    I understand that if I am granted probation or placed on supervised release by the

2    Court, the terms and conditions of such probation/supervised release are subject to

3    modification at any time.  I further understand that if I violate any of the conditions of my

4    probation/supervised release, my probation/supervised release may be revoked and upon

5    such revocation, notwithstanding any other provision of this agreement, I may be required

6    to serve a term of imprisonment or my sentence otherwise may be altered.

7        This written plea agreement, and any written addenda filed as attachments to this

8    plea agreement, contain all the terms and conditions of the plea.  Any additional

9    agreements, if any such agreements exist, shall be recorded in a separate document and

10   may be filed with the Court under seal; accordingly, additional agreements, if any, may not

11   be in the public record.

12       I further agree that promises, including any predictions as to the Sentencing

13   Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

14   (including my attorney) that are not contained within this written plea agreement, are null

15   and void and have no force and effect.

16       I am satisfied that my defense attorney has represented me in a competent manner.

17       I fully understand the terms and conditions of this plea agreement.  I am not now

18   using or under the influence of any drug, medication, liquor, or other intoxicant or

19   depressant that would impair my ability to fully understand the terms and conditions of this

20   plea agreement.

21

22   02/23/25                          *Without Prejudice*
     _____                  *Casey*
     Date                             _____
                                      Casey James Purington
23                                    Defendant

24              **APPROVAL OF DEFENSE COUNSEL**

25       I have discussed this case and the plea agreement with my client in detail and have

26   advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the

27   constitutional and other rights of an accused, the factual basis for and the nature of the

28   offense to which the guilty plea will be entered, possible defenses, and the consequences

- 8 -

of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2/23/2025

_____
Date

_____
D. Stephen Wallin
Attorney for Defendant

### APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

RACHEL C. HERNANDEZ
Acting United States Attorney
District of Arizona

Digitally signed by MONICA RYAN
Date: 2025.02.24 11:30:06 -07'00'

_____
Date

_____
Monica E. Ryan
Stefani K. Hepford
Assistant U.S. Attorneys

### ACCEPTANCE BY THE COURT

May 6, 2025

_____
Date

_____
Honorable Gonzalo P. Curiel
United States District Judge

- 9 -